### STATE v. JOHN L. WELLS.

121 N. W. (2d) 68.

April 5, 1963—No. 38,717.

*John L. Wells,* pro se, and *Don Morgan,* for relator.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Per M. Larson,* Assistant County Attorney, for respondent.

ROGOSHESKE, JUSTICE.

Defendant was tried and convicted of the crime of swindling under Minn. St. 614.11. Upon his imprisonment after sentence, he appeals from the judgment of conviction.

Numerous assignments of error raise the single issue whether the record discloses sufficient competent evidence to sustain the jury's finding of guilt.

A summary of the information charges that on or about August 2, 1960, defendant and another, with criminal intent, obtained by means of a swindle $215 from Gladys Petran by the use of a trick or scheme commonly called the "fake chimney-repair racket." It alleges that, by deceitful demonstrations and trickery, they represented that the chimney of Miss Petran's residence was in urgent need of repair because of deterioration and gas leakage, and thereby induced her to pay them for needless repairs.

The pertinent parts of § 614.11, under which this charge was made, provide:

"Every person who, by means of * * * any * * * instrument, trick or device, obtains from another person any money or other property of any description, shall be guilty of the crime of swindling, * * *; and every person aiding, encouraging, advising, or confederating with, or knowingly harboring or concealing, any such person, or in any manner being accessory to the commission of the above described offense, * * * shall be deemed principals therein and punished as such."

A review of the record establishes without substantial dispute that defendant is a mason who held himself out as a contractor engaged in the business of repairing homes. He had been engaged in this business in his home state of Iowa and in Illinois before he came to Minnesota. He owns a truck equipped for this activity. It was his practice to drive about in residential areas, soliciting mainly masonry repair work from owners of homes which appeared to him to be in need of repair. He came to Minneapolis from Davenport, Iowa, in July 1960 with a friend, Jim Spar; and by prearrangement they, together with William Elvidge, a former acquaintance, jointly engaged at various times in this type of general repair business. They were hired by Miss Petran to repair the chimney of her home, a building which had been built more than 50 years ago. Miss Petran, aged 59, had lived there during her entire lifetime. The nature of the repairs made to the chimney was some tuck pointing of the area of the chimney extending above the roof and at the

base of the chimney in the basement; and also the application of a cement-base paint to those areas for the purpose of sealing and waterproofing. Defendant participated in the work, which was completed in a matter of hours. Thereupon, defendant and his associates received a check from Miss Petran for the agreed-upon sum of $215. Defendant's name appeared as payee on the check, which he admitted receiving from Elvidge. Defendant thereafter endorsed and cashed the check at a bank.

It cannot be questioned that the charge made against defendant, if proved, is a violation of § 614.11. The statute was intended to reach cheats and swindlers of all kinds and descriptions. State v. Smith, 82 Minn. 342, 85 N. W. 12. Although varying techniques may be employed, the gist of the offense is the cheating and defrauding of another of his property by deliberate artifice. The fact that the transaction has the semblance of a legitimate business contract may obscure its true nature, but not prevent it from constituting a swindle. State v. Yurkiewicz, 208 Minn. 71, 292 N. W. 782.

The essence of defendant's contentions is that the evidence is legally insufficient to sustain a finding that Miss Petran was swindled and that he knowingly and intentionally participated.

Under settled rules governing our review, we are obliged to hold the evidence sufficient. The testimony of numerous witnesses established that the chimney was sound, that the repairs were unnecessary and of dubious value, and that there was indeed no urgent need to stop any gas leakage because none existed. Further, the jury could find that Miss Petran was fraudulently induced to agree to the work by two instances of trickery designed to demonstrate the necessity and the urgency of the repairs. One occurred when Spar used a ladder from defendant's truck to examine the chimney extending above the roof. While Miss Petran, Elvidge, and defendant watched from the ground, he demonstrated the condition of the chimney by "inserting" the bow of his glasses into a "gap" in the mortar, intending thereby to convey the false notion that this part of the chimney was in utter disrepair. The other was when Elvidge "demonstrated" the urgent need of repairs to the part of the chimney located in the basement. As Miss Petran testified:

"* * * He rubbed his fingers on the cracks in between the bricks, and then he lit a match and it burned and he said that if this chimney was not repaired, it would explode."

Defendant's admissions during interrogation and other testimony permitted the jury to conclude that this burning was accomplished by rubbing a combustible chemical on the chimney and could in no wise have been produced by escaping gas.

In the face of this compelling evidence that Miss Petran was in fact swindled, defendant argues that his part amounted to no more than supplying the equipment and doing the work. He insists that he did not participate in the acts constituting the swindle. The simple answer to this is that the statute explicitly makes one assisting in a swindle a principal. In the light of defendant's admitted involvement, to identify defendant with the acts constituting the crime required the additional proof of his criminal intent; that is, that he knew what the apparent leader, Elvidge, was perpetrating and aided and confederated with him. Ample evidence exists to contradict defendant's testimony in this respect. We deem it unnecessary to detail this evidence except to observe that defendant's ownership of the truck and equipment; his act of endorsing and negotiating the check; and the direct testimony of Miss Petran that he was in fact present when Elvidge, as well as Spar, "demonstrated"; together with the other facts and circumstances disclosed established a sufficient basis to permit the jury's conclusion that defendant participated in the scheme with intent to swindle Miss Petran.

We have reviewed defendant's claims that the court erred in admitting certain exhibits and in permitting testimony concerning defendant's admission to a police officer that his hair was bleached following the commission of the crime charged against him, and that the trial judge exhibited "prejudice toward the defense." The record does not support defendant's claims; and no purpose would be served in expressing more than our conclusion that they are without merit and in no way prejudiced the substantial rights of defendant or interfered with the fair trial that he was in fact accorded.

Affirmed.