PAGE, Justice
(dissenting).
I respectfully dissent. In my view, the sentencing court calculated Kangbateh’s initial sentence of 165 months by adhering to the Minnesota Sentencing Guidelines, which required the sentencing court to add 12 months for the offense committed for the benefit of a gang to the presumptive duration for the predicate offense of attempted second-degree murder.[1] Because it is axiomatic that a defendant may not be punished for an offense for which there is no conviction and because in this ease we know that Kangbateh’s original sentence specifically included 12 months for an offense that was reversed on appeal, on remand the sentencing court was required, at a minimum, to subtract 12 months from Kangbateh’s sentence.
Kangbateh was initially found guilty of attempted second-degree murder for the benefit of a gang, attempted second-degree murder, second-degree assault for the benefit of a gang, and second-degree assault. In sentencing Kangbateh on the attempted second-degree murder for the benefit-of-a-gang offense, the sentencing court explained, “the normal sentence in this matter would be to sentence at the middle of the box and I don’t see that there’s any reason to do otherwise.” The court then sentenced Kangbateh to an executed term of 165 months in prison, which is consistent with a middle-of-the-box sentence under the Guidelines for the offense of attempted second-degree murder for the benefit of a gang committed by a defendant like Kangbateh with a criminal history score of zero.[2]
*17 Kangbateh appealed all four convictions. The court of appeals reversed both of the convictions for the crimes that included the “for the benefit of a gang” offense and remanded for resentencing. State v. Kangbateh (Kangbateh I), No. A11-2147, 2012 WL 5990229, at *6 (Minn.App. Dec. 3, 2012).
On remand, the sentencing court sentenced Kangbateh to 165 months for the offense of attempted second-degree murder. In doing so, the court explained:
I would state for the record that the Court is aware that this is the same sentence that was originally imposed. However, it is well within the guidelines, and the Court believes that the sentence is appropriate given the sheer wanton, brazenness of the act. The defendant fired a weapon into a crowd of people whom he did not know, obviously intending to harm or to kill someone, in addition to which his behavior in court has been of an extremely threatening measure — extremely—has been extremely threatening, and the Court believes that he is, indeed, a dangerous person and should be given — and should be sentenced accordingly. I do not believe it’d be proper to sentence above this sentence, as the Court did not wish to appear to be in some way vindictive as the result of the defendant exercising his rights to an appeal.
That’s all.
(Emphasis added.) The court of appeals affirmed. State v. Kangbateh (Kangbateh II), No. A13-1071, 2013 WL 6050479, at *2 (Minn.App. Nov. 18, 2013). On appeal to us, Kangbateh argues that, because he was originally sentenced to 153 months for the offense of attempted second-degree murder and 12 months for committing the attempted second-degree murder offense for the benefit of a gang, his sentence on remand should have been no longer than 153 months.
At the time of Kangbateh’s offense, Section II.G. of the Minnesota Sentencing Guidelines (2009) provided:
For persons sentenced under Minn.Stat. § 609.229, subd. 3(a) where there is a sentence for an offense committed for the benefit of a gang, ... [t]he presumptive duration is determined by the duration contained in the Sentencing Guidelines Grid cell defined by the offender’s criminal history score and the severity level of the underlying crime with the highest severity level, or the mandatory minimum, whichever is greater, plus an additional 12 months or an additional 24 months if the victim of the crime was under the age of eighteen years. If the underlying crime is an attempt, the presumptive duration includes an additional 6 months or an additional 12 months if the victim of the crime was under the age of eighteen years.
Any changes to presumptive sentences under this section are also applied to the upper and lower numbers of the sentencing range provided on the Sentencing Guidelines Grids.
In order to determine a defendant’s sentence, the Guidelines first require a sentencing court to calculate the defendant’s presumptive sentencing range for the underlying offense, here, attempted second-degree murder:
For persons convicted of attempted offenses ..., the presumptive sentence is *18 determined by locating the Sentencing Guidelines Grids cell defined by the offender’s criminal history score and the severity level of the completed ... offense ... and dividing the duration contained therein by two....
Minn. Sent. Guidelines II.G. (2009). In this case, the presumptive range for second-degree murder, a severity level 11 offense, for a defendant like Kangbateh with a criminal history score of zero is 261 months to 367 months, and the presumptive duration[3] is 306 months. See Minn. Sent. Guidelines IV (2009). Because the Guidelines provide that the presumptive sentencing range and presumptive duration for attempted offenses is half of that required for completed offenses, see Minn. Sent. Guidelines II.G (2009), Kangbateh’s presumptive sentencing range for attempted second-degree murder was 130.5 to 183.5 months, and the presumptive duration was 153 months.
Next, because Kangbateh was sentenced for attempted second-degree murder for the benefit of a gang, the Guidelines required that an additional 12 months be added to the lower and upper ends of the sentencing range, Minn. Sent. Guidelines II.G. (2009), making the bottom of the presumptive range 130.5 months plus 12 months for a total of 142.5 months, and the top of the presumptive range Í83.5 months plus 12 months for a total of 195.5 months, with the presumptive duration being a total of 165 months. Id. As previously noted, the sentencing court explained that “the normal sentence in this matter would be to sentence at the middle of the box and I don’t see that there’s any reason to do otherwise.”[4] Thus, consistent with the Guidelines’ presumptive duration, the court sentenced Kangbateh to an executed term of 165 months in prison.
Here, in affirming Kangbateh’s sentence on remand, the court begins by refuting Kangbateh’s argument that the “sentencing court originally imposed a 153-month sentence for [his] underlying attempted-murder conviction.” While the court is correct that Kangbateh’s argument is inconsistent with a proper reading of the Guidelines, the court’s discussion does not end the analysis. In fact, by shortcutting the analysis, the court does a disservice to our obligation of ensuring that, on remand from a sentence reversal, a defendant does not receive an improper sentence. After dismissing Kangbateh’s argument, the court ultimately concludes that the record does not support the conclusion that Kang-bateh’s initial sentence included an additional 12 months. The court goes as far as to say, “the district court never referenced either' 153 months or 12 months at the original sentencing hearing.” Moreover, the court adds, “the complete absence of any discussion of the benefit-of-a-gang element at the original and remand sentencing hearings demonstrates that it was of little import in determining Kangbateh’s sentences....”
Based on these statements, the court ignores the words used by the sentencing court at Kangbateh’s first sentencing, and ignores the requirements in the Guidelines. It is self-evident that the Guidelines mandated that Kangbateh’s sentence for attempted second-degree murder committed for the benefit of a gang be calculated, as discussed above, by determining the appropriate sentencing range for the pred *19 icate offense and then adding a mandatory 12 months to each end of the range for committing the predicate offense for the benefit of a gang. Further, it is self-evident that the presumptive duration for Kangbateh’s original sentence under the Guidelines was 165 months, that the sentencing court intended to sentence Kang-bateh to the presumptive duration[5] under the Guidelines, and that the sentence imposed by the sentencing court was 165 months. Given these facts and the presumption that the court complied with the Guidelines when it sentenced Kangbateh, it is also self-evident that the original sentence imposed included the additional time mandated by the Guidelines when the offense being sentenced was committed “for the benefit of a gang.” Because Kangba-teh’s original sentence included the additional time required for an offense committed “for the benefit of a gang,” which was reversed on appeal, fairness and justice require that the added time be subtracted on remand.[6]
In addition to principles of fairness and justice, the principle articulated in Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), prohibits the consideration of the offense “for the benefit of a gang” on remand. In Burks, the United States Supreme Court concluded that when a conviction is reversed, as here, for insufficient evidence, double jeopardy prohibits retrial. Id. at 18, 98 S.Ct. 2141. Further, as we noted in Hankerson v. State, “[I]f the state [] presented insufficient evidence to support the district court’s adoption of the aggravating factors in the first trial, the Burks exception might ... preclude any consideration of these aggravating factors on resentenc-ing.” 723 N.W.2d 232, 238-39 (Minn.2006). The principle underlying the rule articulated in Burks and Hankerson applies with equal, if not greater, force in this case.
Finally, the court notes:
[T]he dissent’s interpretation of the record presumes the following facts. First, the district court calculated Kangbateh’s initial sentence by determining that the appropriate sentence for the lesser-included offense was 153 months and then adding 12 months solely to account for the fact that the lesser-included offense was committed for the benefit of a gang and the victim was younger than 18. Second, the court of appeals ruled that the State failed to prove that Kangbateh committed the lesser-included offense for the benefit of a gang. Third, on remand the original justification for the 12-month addition to Kangbateh’s sentence was no longer valid. Fourth, knowing that the original justification was no longer valid, the district court *20 added 12 months to Kangbateh’s sentence without any legal justification.
The court is simply wrong when it asserts that, under my interpretation of the record, the facts it lays out must be true. In making that assertion, the court misreads the record and misconstrues my dissent. Moreover, the court’s assertion does not have to be true to conclude that Kang-bateh’s original sentence included additional time for an offense that was reversed on appeal, and that on remand the sentencing court was required to subtract that additional time from Kangbateh’s sentence. First, as explained in some detail above, if the sentencing court properly followed the Guidelines, which our standard of review requires us to presume that it did, and intended to originally sentence Kangbateh to the middle of the box for attempted second-degree murder for the benefit of a gang, which is what the court said it was doing at the time of sentencing, then 165 months was the presumptive Guidelines sentence and the sentence the court imposed.[7] Second, whether the court of appeals ruled that “the State failed to prove that Kangbateh committed the lesser-included offense for the benefit of a gang” has no bearing on the outcome of this case. There is no question that the court of appeals reversed both of Kangbateh’s convictions for the offenses that included the separate offense “for the benefit of a gang” and remanded for resentencing. No appeal was taken from that decision. Thus, the reason for the court of appeals’ reversal is not relevant to our decision here nor properly before us. Therefore, the court of appeals’ reasoning does not matter.
What does matter is that after the reversals Kangbateh may not be punished for having committed attempted second-degree murder for the benefit of a -gang, which is what the court does with its holding today. Because Kangbateh may not be punished for offenses that were reversed on appeal, the court’s third point is baffling. There is no question that the sentencing court had no justification for punishing Kangbateh for a conviction that had been reversed and for which therefore there was no longer a conviction. Finally, with respect to the court’s fourth point, it is difficult to tell what rationale the sentencing court used as the basis for Kangbateh’s sentence on remand. What we do know is that, at Kangbateh’s initial sentencing, the sentencing court explained that Kangbateh deserved “normal” treatment, which was a middle-of-the-box sentence of 165 months. At Kangbateh’s remand sentencing for attempted second-degree murder, in which the presumptive *21 range was 130.5 to 183.5 months, and the presumptive duration was 153 months, the sentencing court was inconsistent with its earlier statements and did not sentence Kangbateh to the middle of the box. Instead, the court sentenced Kang-bateh to an executed sentence that was greater than the middle of the box. Here, the court pretends that the sentencing court did not say what it said or do what it did. This pretext is in direct contradiction to the record in this case.
Thus, I would reverse the court of appeals and remand to the district court for the imposition of a sentence no greater than the presumptive duration for attempted second-degree murder.[8]
For these reasons, I respectfully dissent.

. As of 1990, a “crime ... in furtherance of criminal activity by an organized gang” was an aggravating factor that could support a departure. See Minn. Sent. Guidelines II. D.2.b.(7) (1990). This provision was deleted in 1991. See Minn. Sent. Guidelines II.D.2.b. (1992). The Sentencing Commission clarified this change in the Guidelines by stating: "Gang related criminal activity is now a separate crime under Minn.Stat. § 609.229 and can no longer be used as a reason for departure from the presumptive sentence.” Minn. Sent. Guidelines II.D.205 (1992).

. The 165-month sentence imposed was also consistent with the pre-sentence investigation report, which was based on the Guidelines. The recommendation in the report reads as follows:
Based on the available information, this investigating officer respectfully recommends that the Court sentence the defen *17 dant on Count 1 Attempted Intentional Second Degree Murder for the Benefit of a gang in accordance with the Minnesota Sentencing Guidelines and commit him to the Commissioner of Corrections for a term of 165 months (minimum incarceration equals 110 months/maximum supervised release equals 55 months), executed.
(Emphasis added.)

. The current Guidelines define "presumptive duration” as the "recommended fixed sentence length in months found in the appropriate cell on the applicable Grid.” Minn. Sent. Guidelines l.B.13.b.

. Courts have used the phrase "middle of the box” synonymously with the phrase "presumptive duration.”

. I presume that the sentencing court sentenced Kangbateh in accordance with the Guidelines. See State v. Shattuck, 704 N.W.2d 131, 139 (Minn.2005) (explaining that in 1997 the legislature amended the statute regarding the Minnesota Sentencing Guidelines by adding the language, ''[ajlthough the sentencing guidelines are advisory to the district court, the court shall follow the procedures of the guidelines when it pronounces sentence” (citation omitted) (quotation marks omitted)); see also Hannon v. State, 752 N.W.2d 518, 522 (Minn.2008) ("[W]e presume that a judge has discharged her duties properly.”).

. We have held that a court may not impose a more severe sentence upon a defendant after the defendant’s successful appeal results in a remand for a new trial. State v. Holmes, 281 Minn. 294, 304, 161 N.W.2d 650, 656-57 (1968). In State v. Prudhomme, we expanded on Holmes and held that “procedural fairness and principles of public policy” prohibit a trial court from imposing a more severe sentence for the same crime after a case has been remanded for resentencing. 303 Minn. 376, 380, 228 N.W.2d 243, 246 (1975).

. The court contends that:
The dissent's argument presumes that the district court calculated this particular sentence by first determining that the appropriate sentence for the lesser-included offense of attempted second-degree murder-was a middle-of-the-box sentence of 153 months and then adding 12 months to account for the fact that the lesser-included offense was committed for the benefit of a gang and the victim was younger than 18.
The court's characterization of my dissent is simply wrong. The court's myopic focus on Kangbateh’s argument that he was sentenced to 153 months for the offense of attempted second-degree murder and 12 months for committing the attempted second-degree murder offense for the benefit of a gang has caused it to misread my dissent. I do not presume, as the court suggests, that the sentencing court simply sentenced Kangbateh to 153 months for attempted second-degree murder and then added 12 months for the "benefit of the gang” offense. I only presume that the sentencing court did what it said it was doing-sentencing Kangbateh to a middle-of-the-box sentence, and that in doing so the court executed its duties in accordance with the requirements of the sentencing Guidelines, as discussed above, and the recommendation from the presentence investigation report.

. To the extent that there is any question as to whether Kangbateh's original sentence of 165 months included the mandated additional time for “the benefit of a gang” offense, the court’s resolution of this case is still improper. The proper resolution would be to remand to the sentencing court for clarification as to whether the original sentence included the mandated additional time.